UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
JENNIFER KASS,

                                          Plaintiff,

    -against-

KILOLO KIJAKAZI, *Commissioner of Social Security*,

                                        Defendant.
----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
22-CV-01062 (JMA)

**FILED**
**CLERK**

10:11 am, Aug 17, 2023

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

Plaintiff Jennifer Kass ("Plaintiff") seeks review and reversal of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant"), reached after a hearing before an administrative law judge, denying her application for Social Security disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF Nos. 14, 15.) For the following reasons, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## I.    BACKGROUND

Plaintiff filed her application for disability and disability insurance benefits on July 20, 2016, alleging a disability onset date of January 15, 2010. (Tr.[1] 4.) She was 37 years old at the time she filed her application. (Tr. 12.)

Following the denial of her application, Plaintiff requested a hearing. On November 16, 2018, Administrative Law Judge David Tobias (the "ALJ") conducted an administrative hearing,

---

[1]     Citations to "Tr." refer to the corresponding pages of the certified administrative transcript. (ECF No. 15-3.)

at which Plaintiff was represented by counsel. (Tr. 29.) Yaakov Taitz, Ph.D., a vocational expert (the "VE"), also testified at the hearing. (Id.)

In a decision dated August 26, 2019, the ALJ issued a decision denying Plaintiff's claim. (Tr. 1–18 (the "Decision").) The ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2014. (Tr. 7.) The ALJ then followed the five-step analysis pursuant to 20 C.F.R. § 404.1520. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (Id.) Second, the ALJ found that Plaintiff had demonstrated the following severe impairments: lumbar spine facet arthropathy and osteophytes, cannabis dependence, cocaine dependence, opioid dependence, alcohol abuse, and bipolar disorder. (Id.) Third, the ALJ decided that none of these impairments—alone or in combination—met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 8.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Plaintiff "is limited to work that does not involve more than occasional, superficial interaction with coworkers or the public; and is limited to work that allows unscheduled breaks or absences that would exceed 15% of a full time work schedule." (Tr. 9.) The ALJ next found, based on the VE's testimony, that Plaintiff was unable to perform any past relevant work, and that her acquired job skills were not transferable to any other jobs consistent with her RFC. (Tr. 12.)

Based on the VE's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 12.) Accordingly, the ALJ concluded that Plaintiff was "disabled," as defined by the Act. (Tr. 12–13.)

However, in light of the evidence of Plaintiff's drug addiction and alcoholism ("DAA"), the ALJ proceeded to consider whether, absent her DAA, she would remain disabled. (Tr. 13.)

Ultimately, the ALJ determined—based on the record as a whole—that if Plaintiff's DAA ceased, her RFC would improve such that she would no longer need to take unscheduled breaks or absences that would exceed 15% of a full-time work schedule. (Tr. 15–17.) With these restrictions removed, Plaintiff's revised RFC would permit her to perform the jobs of Addresser, Document Preparer, and Ticket Counter. (Tr. 17.) Thus, the ALJ concluded that Plaintiff was "not disabled" because her DAA was a contributing factor material to the determination that she was disabled. (Tr. 18.)

The Decision became final on January 3, 2022, when the Appeals Council denied Plaintiff's request for review. (Tr. 24–29.) This appeal followed.

## II.  LEGAL STANDARDS

### A.  Standard of Review

In reviewing a denial of disability benefits by the Commissioner, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvior v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d

Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see also Shalala v. Schaefer, 509 U.S. 292, 296–97 & n.1 (1993). The "reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations." Kessler v. Comm'r of Soc. Sec., No. 17-CV-4264, 2020 WL 1234199, at *5 (E.D.N.Y. Mar. 13, 2020) (citing Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999)).

**B.     Social Security Disability Standard**

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" Id. § 423(d)(2)(A).

As discussed above, the Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Within this framework, a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of

>continuing in his prior type of work, . . . and (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his prior type of work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant bears the burden at the first four steps, but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

However, "[w]here there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012) (citing 20 C.F.R. § 416.935(a)). This is because "[a]n individual is not considered disabled 'if alcoholism or drug addiction would… be a contributing factor material to the Commissioner's determination that the individual is disabled.'" Smith v. Comm'r of Soc. Sec. Admin., 731 F. App'x 28, 30 (2d Cir. 2018) (quoting 42 U.S.C. § 423(d)(2)(C)). DAA "is a material factor if the individual would not be found disabled if she stopped using drugs." Id. (citing 20 C.F.R. §§ 404.1535, 416.935). Thus, "the ALJ must determine which, if any, of the claimant's limitations would remain if the claimant were to stop the drug or alcohol use and if any of the remaining limitations would render the claimant disabled." Kelly v. Comm'r of Soc. Sec., No. 19-CV-1363, 2020 WL 6945926, at *2 (E.D.N.Y. Nov. 25, 2020) (citing 20 C.F.R §§ 404.1535(b)(2)(i), 416.935(b)(2)(i); 404.1535(b)(2)(ii), 416.935(b)(2)(ii)). The plaintiff bears the burden of proving that her DAA is not a material factor. See Cage, 692 F.3d at 123–25. The ALJ's materiality determination must be supported by substantial evidence. See id. at 127.

### III.   DISCUSSION

Plaintiff challenges the ALJ's conclusion that her DAA was a contributing factor material to her disability determination, i.e., that she would not be disabled absent her DAA. (Pl.'s Mem.

5

at 5, 8, ECF No. 14-2.) Specifically, she contends that: (i) the Commissioner bears the burden of proving DAA materiality; (ii) the ALJ's materiality determination is not supported by substantial evidence; and (iii) her history of substance abuse must be viewed in the broader context of the opioid crisis. All of these contentions are meritless, for the reasons explained below.

A. **Plaintiff, Not the Commissioner, Bears the Burden of Proof on Materiality**

Plaintiff argues that after she "met her burden at step four . . . the burden shifted to the Commissioner . . . and [the Commissioner] has not met its burden at step [five]." (Pl.'s Mem. at 8.) In doing so, however, she misconstrues the burden-shifting framework applicable to cases involving DAA. She is correct that as the claimant, she bears the burden at the first four steps of the disability analysis, and that at step five, the burden shifts to the Commissioner to demonstrate that "there is work in the national economy that [she] can do." Poupore, 566 F.3d at 306. But, "[w]here there is medical evidence of an applicant's drug or alcohol abuse," as is undisputed here, "the 'disability' inquiry does not end with the five-step analysis." Cage, 692 F.3d at 123 (citing 20 C.F.R. § 416.935(a)). And it is well-settled that at this additional step, Plaintiff—not the Commissioner—bears the burden of proving that her DAA is not material to the ALJ's disability determination. See id. at 123–25.

Relatedly, Plaintiff also contends that that "[t]he ALJ erred in determining [her] residual functional capacity without full evaluation of the effect of her bipolar condition." (Pl.'s Mem. at 9.) In support of this argument, she cites an internal document issued by the Commissioner, Questions and Answers Concerning DAA from the 07/02/96 Teleconference–Medical Adjudicators, EM–96200 (Aug. 30, 1996) (the "Teletype"). As relevant here, the Teletype states that "[w]hen it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." Id. Plaintiff argues that "this is such a case in which it is impossible to predict

6

or gauge the combined effect of [her] bipolar condition and drug use," (Pl.'s Mem. at 10), and therefore the ALJ should have found that her DAA was not material. Thus, by Plaintiff's logic, the Teletype "could be read to endorse a presumption in favor of the applicant—i.e., that a tie goes to the claimant . . . . [s]o construed, it would effectively shift the burden to the Commissioner to prove DAA materiality." Cage, 692 F.3d at 125 (internal citations and quotation marks omitted). However, the Second Circuit rejected a similar reading of the Teletype in Cage and reaffirmed that "the burden of proving DAA immateriality rests with the claimant[.]" 692 F.3d at 125. The Commissioner subsequently issued Social Security Ruling 13-2p, which reaffirmed that "the claimant continues to have the burden of proving disability throughout the DAA materiality analysis." 2013 WL 621536 (Feb. 20, 2013). Plaintiff's insistence that the Commissioner bears the burden on materiality lacks any basis in law.[2]

## B. Substantial Evidence Supports the ALJ's Disability Determination

Having established the applicable burdens, the Court turns to the merits of Plaintiff's appeal. For the reasons explained below, Plaintiff has not demonstrated that her DAA was not a material factor, and substantial evidence supports the ALJ's determination that it was.

Here, the ALJ found that Plaintiff's lumbar spine facet arthropathy and osteophytes, cannabis dependence, cocaine dependence, opioid dependence, alcohol abuse, and bipolar disorder were severe. (Tr. 7.) Considering these severe impairments, the ALJ found that Plaintiff had the RFC to perform sedentary work, except that she "is limited to work that does not involve more than occasional, superficial interaction with coworkers or the public; and is limited to work that

---

[2] The Court also rejects Plaintiff's related assertion that "[a]t the very least, this complicated record required the testimony of a medical expert" to evaluate the combined effects of her DAA and bipolar condition, and that absent such testimony, the ALJ's disability determination is not supported by substantial evidence. (Pl.'s Mem. at 5, 10–12.) But the Second Circuit rejected such a "brightline rule" in Cage, explaining that "such a rule, found nowhere in the U.S.[ ]Code or C.F.R., is unsound." 692 F.3d at 126. To the extent Plaintiff relies on Mitchell v. Astrue, No. 07-CV-285, 2009 WL 3096717 (S.D.N.Y. July 6, 2009), as support for such a proposition, (Pl.'s Mem. at 11–12), her reliance is misplaced.

allows unscheduled breaks or absences that would exceed 15% of a full time work schedule." (Tr. 9.) Because she cannot perform any past relevant work and possesses no skills transferable to jobs consistent with her RFC, the ALJ concluded that she is disabled. (Tr. 12–13.) However, because there was evidence of DAA, the ALJ then properly considered whether her DAA was a contributing factor material to the determination that she is disabled. Reviewing the record as a whole, the ALJ found that without her DAA, Plaintiff would no longer have any limitations in concentrating, persisting, or maintaining pace. (Tr. 14.) As a result, her RFC would improve such that she would no longer need to take unscheduled breaks or absences that would exceed 15% of a full-time work schedule. (Tr. 15–17.) Absent these restrictions, her RFC would permit her to perform the jobs of Addresser, Document Preparer, and Ticket Counter, thus rendering her not disabled. (Tr. 17–18.) Substantial evidence supports the ALJ's finding that Plaintiff's DAA was a contributing factor material to the determination of her disability.

The ALJ compared Plaintiff's symptoms and functioning during periods of substance abuse to her symptoms and functioning while sober. For example, the ALJ referenced Plaintiff's mental health records from Phoenix Center Addiction and Rehabilitation Center from 2012 and 2013, to which she was referred by the Department of Social Services. These records reflect, among other things, that Plaintiff's mental state improved while she was sober. When Plaintiff first presented to the Phoenix Center in June 2012, she reported cannabis dependence, alcohol abuse, and cocaine-related disorder, and that she was suffering from bipolar disorder, generalized anxiety disorder, and taking antidepressants. (Tr. 657–58.) Plaintiff enrolled in a residential substance abuse treatment program in August 2012. (Tr. 651.) She remained there until February 2013, when she was discharged having "met 100 percent of [her] treatment goals and ha[ving] successfully completed [the] program." (Tr. 651.)

She returned to the Phoenix Center the following month. She reported that she had not

8

smoked marijuana within the past six months, had not used cocaine within the past year, and had not used opioids within the past 15 months. (Tr. 647–48.) Her report was corroborated by a drug test performed by the Phoenix Center the previous month, which returned negative for alcohol, cocaine, marijuana, and opioids, among other substances. (Tr. 666.) During this period of sobriety, she had transitioned from being friendless, (Tr. 656), and neglecting her child, (Tr. 658, 662), to having three "close" friends, living independently, and caring for her daughter. (Tr. 646.) By this point, she also reported "good social skills" and that she "makes friends easily." (Tr. 646.) She reported that she has "good communication skills," "being able to manage emotions well," and to "recently feeling 'great.'" (Tr. 648.) Similarly, she identified her "strengths" as, among other things, having "good person[al] skills." (Tr. 649.) Most tellingly, however, she reported "being in good mental health," "being able to think clearly" and "make[] decisions easily," and that with "counseling with mental health," she was experiencing "no current issues." (Tr. 648.) These records support the ALJ's finding that Plaintiff's "mental state significantly improved" during this period of sobriety. (Tr. 15.)

Further, the ALJ also properly considered Plaintiff's own testimony during the hearing regarding the effect of DAA on her symptoms and functioning. At the hearing, she reported having been sober for nine months at that time. (Tr. 69.) When asked by the ALJ whether she believed that her DAA had impacted her inability to work during the relevant time period, she responded, "I think it exasperated my condition more." (Tr. 69.) She explained that her DAA "exasperated" her bipolar condition and "brought it out more because my moods were so up and down." (Id.) She also acknowledged that her DAA "[w]ithout a doubt" negatively impacted her ability to attend work during the relevant time period. (Tr. 71.)

Based on this record, the Court finds that the ALJ's determination that Plaintiff's DAA was a contributing factor material to the disability determination was proper and supported by

9

substantial evidence.

As in Smith, not only do Plaintiff's "medical records show[] that her depression, anxiety, and bipolar disorder symptoms were well-managed through medications and that her functioning improved when she underwent substance abuse treatment," but also "[Plaintiff] herself reported . . . that her substance abuse made her psychiatric conditions worse and that she experienced improvements when sober." Smith, 731 F. App'x at 30. And contrary to Plaintiff's assertion that there was "insufficient evidence to justify the ALJ's determination" regarding DAA materiality because she "showed improvement with structured treatment," (Pl.'s Opp'n at 3, ECF No. 14-4), the Court concludes that Plaintiff's periods of sobriety support the ALJ's finding. See Cage, 692 F.3d at 127 (substantial evidence supported determination that DAA was material despite absence of evidence of "extended periods of sobriety"); see also Johnson v. Berryhill, No. 17-CV-6436, 2018 WL 4275985, at *15 (W.D.N.Y. Sept. 7, 2018) (affirming ALJ's finding that DAA was material where "[a]lthough the record does not reflect that [plaintiff] enjoyed prolonged periods of sobriety, it does reflect several periods of sustained sobriety during which [plaintiff] generally reported decreased symptoms of depression and anxiety."); Rowe v. Colvin, 15-CV-652, 2016 WL 5477760, at *8 (N.D.N.Y. Sept. 29, 2016) (affirming ALJ's finding that DAA was material where "[t]he medical evidence . . . supports a finding that [plaintiff's] functioning improved since [plaintiff] abstained from alcohol, including periods of 'brief sobriety'").

Ultimately, although Plaintiff's bipolar condition persisted while she was sober, the record reflects that her symptoms were milder than they were during periods of drug and alcohol abuse. Thus, the Court finds that there is "'relevant evidence [that] a reasonable mind might accept as adequate to support [the] conclusion,'" Cage, 692 F.3d at 127 (quoting Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010)), that Plaintiff's "marked" difficulties with concentrating, persisting, or maintaining pace, would cease altogether in the absence of DAA. As this improvement would

render her "not disabled," her DAA was "material" to the ALJ's disability determination. Because this finding is supported by substantial evidence, the Court must affirm the Commissioner's decision that Plaintiff is not disabled.[3]

### C. Plaintiff's Opioid Addiction Does Not Entitle Her to Special Status

Finally, Plaintiff asserts that "[her] problem with prescription opioids cannot be reviewed outside of the context of the actions of 'Big Pharmacy' during the period in question," that she "was the perfect victim," and that "[s]he should not be made a victim again by the Social Security Administration's broad reading of an antiquated rule which does not reflect our current understanding of addiction as an illness." (Pl.'s Mem. at 13.) The suffering and destruction wrought by the opioid crisis is well documented and the Court need not rehash it here. See, e.g., In re Purdue Pharma, L.P., 635 B.R. 26, 44 (S.D.N.Y. 2021) ("According to the Centers for Disease Control and Prevention, from 1999 to 2019, nearly 247,000 people died in the United States from overdoses involving prescription opioids." (citation omitted)), rev'd and remanded, 69 F.4th 45 (2d Cir. 2023), cert. granted, No. 23-124, 2023 WL 5116031 (U.S. Aug. 10, 2023). However, the Act and applicable regulations simply do not carve out a special exception for individuals who are addicted to opioids. The law is clear: if an individual's opioid addiction is "a contributing factor material to the Commissioner's determination that the individual is disabled," that individual "is not considered disabled[.]" 42 U.S.C. § 423(d)(2)(C). And in Plaintiff's case, the ALJ concluded that her DAA was material to the disability determination. Therefore, she is not disabled.

---

[3] Plaintiff also asserts in passing that the Commissioner "failed to properly evaluate the medical evidence with regard to [her] neck and headache impairments." (Pl.'s Mem. at 5.) However, she does not elaborate on this argument in her brief, her statement of contentions, or her opposition to the Commissioner's cross-motion, and the Court therefore declines to consider it further. Even if the Court were to consider this argument, it would be rejected for substantially the same reasons stated in the Commissioner's brief. (Def.'s Mem. at 16–17.)

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS the Commissioner's cross-motion. The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: August 17, 2023
Central Islip, New York

                                              /s/ (JMA)
                                         JOAN M. AZRACK
                                            UNITED STATES DISTRICT JUDGE